UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-634-2 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| ALBERT ROBINSON, JR., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On August 25, 2023, defendant Albert Robinson, Jr. ("Robinson") was sentenced to a custody term of 97 months, following his guilty pleas to possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. No. 46 (Judgment); *see* Minutes of Proceedings [non-document], 8/25/2023; *see also* Doc. No. 11 (Indictment).) The sentence was imposed in accordance with a binding Rule 11(c)(1)(C) plea agreement. (*See* Doc. No. 34 (Plea Agreement).) On May 29, 2025, the Court denied Robinson's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 55 (Memorandum Opinion and Order); *see* Doc. No. 50 (Motion to Reduce Sentence).)

Now before the Court is Robinson's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 51 (Motion).) Appointed counsel filed a supplement in support of

Robinson's *pro se* motion (Doc. No. 60 (Supplement)), and plaintiff United States of America (the "government") filed an opposition to the motion. (Doc. No. 61 (Response).) For the reasons that follow, Robinson's motion for compassionate release is denied.

### I. LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Robinson does not seek relief under Rule 35, nor does he claim that he was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered. Instead, he is seeking relief from his sentence under the compassionate release statute. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission';

and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13, was amended, effective November 1, 2023, and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

The parties agree that Robinson has exhausted his administrative remedies. (Doc. No. 60, at 1[1] (citing Doc. 60-1 (Warden Response); Doc. No. 61, at 4–5.) Accordingly, the Court turns to a consideration of whether Robinson has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i) and discussed in detail in § 1B1.13(b), as amended. The Court finds that Robinson has failed to meet this burden, and the motion for compassionate release must be denied for this reason alone. *See United States v. Williams*, 458 F.

---

[1] All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Supp. 3d 939, 943 (W.D. Tenn. 2020) ("The defendant bears the burden of showing he . . . is entitled to compassionate release." (citations omitted)).

### A. Medical Circumstances of the Defendant § 1B1.13(b)(1))

In his *pro se* motion, Robinson represents that his mother passed away shortly before he was sentenced in this case. He maintains (without any support) that her passing has had a "tremendous [e]ffect on [his] mentality." (Doc. No. 51, at 1.) To the extent that Robinson is arguing that his mental health has been negatively impacted by the death of his mother, such a representation falls short of establishing an extraordinary and compelling reason for early release for several reasons.

As an initial matter, the Court was aware at sentencing that Robinson's mother had, sadly "passed away during the pendency of this case after he was taken into custody." (Doc. No. 49 (Sentencing Hearing Transcript), at 13 (the Court noting "And Mr. Robinson, you do have the Court's sympathy relative to the loss of your mother"); Doc. No. 40 (Presentence Investigation Report ["PSR"]) ¶ 55.) "Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling.'" *Hunter*, 12 F.4th at 569–70 (rejecting defendant's age as an extraordinary and compelling reason for release); *see United States v. Lawrence*, 609 F. Supp. 3d 544, 549 (E.D. Mich. 2022) (death of the mother of defendant's child was not extraordinary and compelling because it was known at the time of sentencing). The Court was also aware at the time of sentencing that Robinson had experienced challenges with his mental health as a youth. (Doc. No. 49, at 14; Doc. No. 40 ¶¶ 65–66.) It was in response to these past challenges that the Court included in its sentence that Robinson be "assessed for any mental health needs and receive appropriate treatment." (Doc. No. 49, at 19.)

4

The Court took all of Robinson's personal circumstances into account when it agreed to accept the parties' negotiated sentence that fell well below the advisory guideline range. (*See Id.* at 13–15).

Moreover, the Sixth Circuit has made clear that, in order to receive compassionate release, the defendant must show that their "personal circumstances" have "changed so that the district court should weigh the § 3553(a) factors differently than it had at the original sentencing." *Hunter*, 12 F.4th at 569–70 ("A court must find that the facts of the defendant's personal circumstances changed after sentencing in a way that is 'extraordinary and compelling,' before a court is permitted to weigh (or revisit) the § 3553(a) factors" (quoting *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021) (emphasis omitted)). Robinson has failed to demonstrate, through medical documentation or other means, that his mental health has worsened or deteriorated while in prison. *See generally Elias*, 984 F.3d at 520–21 (denying compassionate release motion because movant "did not provide any records in her motion to support" her claimed medical condition (collecting cases)).[2]

Ultimately, the Court finds that Robinson's mental health condition does not establish the existence of extraordinary and compelling reasons for a sentence reduction.

### B. Family Circumstance of the Defendant (§ 1B1.13(b)(3))

Robinson's second identified reason—family circumstances of the defendant—also fails to meet the threshold requirement for compassionate release. Section 1B1.13(b)(3)(D) provides that the incapacitation of an "immediate family member" whose relationship with defendant is

---

[2] In fact, Robinson has failed to demonstrate that his unidentified mental health condition—existing at sentencing or at any time up to the filing of the present motion—qualifies as an extraordinary and compelling reason under § 1B1.13(b)(1)(A). Specifically, Robinson has not established that he suffers from a "terminal illness," that he has a "serious medical" condition for which he is unable to provide self-care in the facility, or that he suffers from a mental condition that requires long-term "specialized care" that "is not being provided" at his facility. § 1B1.13(b)(1)(B) & (C).

5

similar in kind to a parent and child or spouse may establish an extraordinary and compelling reason "when the defendant would be the only available caregiver for such family member or individual." Robinson represents that he has "two disabled sisters who require care." (Doc. No. 60, at 3.) In particular, he notes that his sister Ariel is "intellectually disabled and has mobility issues with only one leg[,]" and that she is a "single mother with a young child and struggles with homelessness." (*Id.*) While Robinson's brother reports that Ariel has now found "Section 8 housing and has an aide that visits," Robinson suggests that Ariel "requires additional assistance with daily care." (*Id.*) He further states that his other sister, Angelique, suffers from multiple sclerosis and epilepsy" and is "permanently disabled." (*Id.*) And while he concedes that her uncle serves as Angelique's "official guardian[,]" he suggests (without any supporting documentation)[3] that her uncle is in his "mid-70s and is psychically unable to provide Angelique with the care she needs." (*Id.* at 4.)

As was the case with Robinson's mother's unfortunate passing, the Court was aware of the existence of his two disabled sisters at the time of sentencing. (Doc. No. 40 ¶ 56.) And while Robinson appears to offer his mother's death as a change in circumstances, he has failed to demonstrate that he is now the only available caregiver. Indeed, the PSR indicates that Robinson has three siblings, in addition to Ariel and Angelique, and that one of his brothers, Andre, has assisted in the care of his disabled sisters. (*Id.*) He has failed to establish—with affidavits or medical records—that Andre could not continue to care for his sisters, especially given the fact that Ariel has secured housing and receives assistance from an aide. Robinson also fails to provide

---

[3] Appointed counsel concedes that, despite receiving two extension of time from the Court (counsel did not request a third extension), she was unable to acquire any records to support defendant's motion. (*Id.* at 1 n.1.))

6

documentation to support his claim that their uncle is currently unavailable to continue to serve in his role as a caregiver for Angelique.[4] In short, even if the Court accepts Robinson's representations that his sisters are incapacitated, as term is understood in the policy statement, Robinson has failed to demonstrate that he is the only available caregiver.

Robinson also notes that he has "multiple kids out there with their mothers as single women." (Doc. No. 51, at 1.) He suggests that, if he were released, he will "be more than help to [his] family." (*Id*.) To the extent that he is offering the needs of his minor children as extraordinary and compelling reasons for early release, Robinson has failed to demonstrate that his children's caregivers have died or are otherwise incapacitated as required by § 1B1.13(b)(3)(A). Though commendable, his wish to be of more help to his children and their mothers does not establish the existence of an extraordinary or compelling reason for early release. *See United States v. Jordan*, No. 17-cr-20593, 2020 WL 6060647, at *2 (E.D. Mich. Oct. 14, 2020) (Defendant's "desire to go home to be with his children and start a new job bodes well for his future, but it [] is not unique or extraordinary" (collecting cases)).

The Court finds that Robinson's stated reasons, separately or in combination, do not establish the existence of extraordinary and compelling reasons to support a reduction in sentence.

C. **Sentencing Factors (18 U.S.C. § 3553(a))**

But even if Robinson had cleared the initial hurdle of demonstrating an extraordinary and compelling reason, his request for compassionate release would still be denied because the relevant § 3553(a) sentencing factors do not support early release. The nature and the circumstances of the

---

[4] Robinson likewise does not document his claim that his uncle "is busy carrying for their aunt who is battling cancer." (Doc. No. 60, at 4.)

charged offenses were serious. Robinson was responsible for possessing with intent to distribute fentanyl, an extremely addictive and deadly controlled substance. The trafficking of controlled substances is certainly dangerous. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." (citations omitted)). The offense was made all the more dangerous by Robinson's possession of a loaded handgun. Moreover, as the Court recognized at sentencing, Robinson has an extensive criminal history, that began when he was only 15 years old, and includes adult convictions for drug possession and trafficking, aggravated burglary, felonious assault and attempted felonious assault, carrying a concealed weapon, and having weapons while under a disability, that earned him a criminal history score of 10 and placed him in a criminal history category V. (*See* Doc. No. 49, at 11; *see also* Doc. No. 40 ¶¶ 28–44.) Robinson's drug trafficking activities and criminal history continue to support the imposed sentence.

The Court further notes that prior periods of incarceration have failed to impress upon Robinson the importance of following the law. For example, in 2014, after serving a five-year custody term for various burglary and weapons offenses, Robinson was approached by police as he was walking in the street and instructed to stay out of the street. Rather than comply with police, he fled the scene. When he was apprehended, a weapon was located in his possession (in addition to a scale with white powder on it). (*See also* Doc. No. 40 ¶¶ 39–40.) While still on supervision for this subsequent weapons offense, Robinson was arrested for attempted assault where he and another person "walked up and began firing shots at [a] residence." (*See also id*. ¶ 41.) Robinson's unwillingness or inability to abstain from dangerous (and illegal) behavior, even after serving multiple prison sentences and periods of supervised release, leads the Court to question whether

8

he would abide by any conditions of early release.

Robinson represents (without support) that he "has yet to take[] any classes" because his facility is "always on lockdown" and that he is on the wait-list for several classes. (Doc. No. 51, at 2.) Even if the Court considers these unsubstantiated claims regarding his efforts to participate in prison programming, the Court must also consider his disciplinary record in prison that demonstrates that his prison terms have consistently been marred by institutional rules violations— including destruction of property, possession of drugs and other contraband, fighting, disregarding officers' orders, causing or threatening to cause physical harm to another, extortion by threats of violence or other means, forging documents, telephone and visiting rules violations, refusing to carry out work assignments, and gang affiliation. (Doc. No. 40 ¶¶ 38, 40–41.) It has also considered Robinson's concern for his sisters and his desire to support his children and their mothers. Nonetheless, the Court underscores that Robinson already received substantial consideration at sentencing when the Court varied downward 14 levels to arrive at the parties' negotiated sentence.[5] (*See* Doc. No. 47 (Statement of Reasons).) Accordingly, the Court finds, after considering all of the § 3553(a) factors, that a further reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court would also find that defendant continues to pose a danger to the community.

---

[5] At sentencing, the Court determined that Robinson's designation as a career offender produced a guideline sentence higher than necessary to meet the requirements of the § 3553(a) factors. (Doc. No. 49, at 19.) Even without the career offender designation, the parties' Rule 11(c)(1)(C) sentence, which the Court imposed, resulted in a substantial downward variance.

## II. CONCLUSION

For the foregoing reasons, the Court denies in its entirety defendant's motion (Doc. Nos. 51, 60) to reduce his sentence.

**IT IS SO ORDERED**.

Dated: September 10, 2025

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**